United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 10, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

03-31213

———————————

DAVID TAYLOR,

Plaintiff-Appellant,

versus

UNITED TECHNOLOGIES CORPORATION, ET AL

Defendants,

CARRIER CORPORATION/CARRIER TRANSICOLD DIVISION

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana,
03-0218

———————————

Before REAVLEY, DAVIS AND WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff David Taylor ("Taylor") challenges the district court's dismissal on summary judgment of his products liability case on grounds that Taylor's use of a diesel generator manufacturer by defendant Carrier Corporation ("Carrier") did not

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

-1-

amount to a "reasonably anticipated use" of the product for purposes of the Louisiana Products Liability Act ("LPLA").[2]  We agree with the district court that the use being made of this product at the time of the injury could not have been "reasonably anticipated" by Carrier, and affirm the judgment for the reasons set forth below.

I.

Carrier manufactures generators that serve as power sources for refrigeration units used in trans-continental shipping.  The generators run on diesel fuel, which is kept in a fuel tank that runs along the sides and bottom of the generator.  Two large filler caps are located on each side of the top of the generator which allow diesel to be added into the tank.  A fuel plug is located about 3/4" from the bottom of the tank which allows the generator's fuel tank to be drained.

On December 10, 2001, Taylor, an experienced welder, undertook the job of repairing a crack in one of Carrier's generators.  Taylor pulled the plug and allowed the generator to drain for one to two hours.  He then washed the outside of the tank and, after waiting a short time for it to dry, began to weld

---

[2]Louisiana law and more specifically the LPLA controls the appeal of this diversity case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  The LPLA sets out Louisiana's exclusive theories of liability for manufacturers for damages caused by their products. La. R.S. 9:2800.52.  To recover under the LPLA, a plaintiff must first prove that his use was a "reasonably anticipated use" as defined under the Act.  La. R.S. 9:2800.54(A).

on the unit. Diesel fuel remained in the tank, however, causing the generator to explode and Taylor to be injured.

Taylor filed suit alleging that his injuries were proximately caused by Carrier's "unreasonably dangerous" product.[3] Specifically, Taylor argued that Carrier's product is "unreasonably dangerous" under the LPLA in (1)construction; (2)design; and (3)inadequate warning. The focus of Taylor's claim dealt with the location of the drainage plug; he argued that because the plug is located along the side, rather than at the bottom of the generator, it is impossible to fully drain all fuel from the generator tank.

The district court granted Carrier's summary judgment and held that Taylor failed to demonstrate that Carrier should have "reasonably anticipated" his use of the generator. The court found that Carrier should not be expected to anticipate that an experienced welder such as Taylor would fail to wash the inside of the tank and fail to remove the filler caps to allow the flammable diesel fumes to ventilate. Thus, the court dismissed the defendant's suit.[4]

---

[3]Though the caption includes United Technologies Corp. as a named defendant, Carrier is the only defendant on appeal. The district court, in its reasons for judgment, confirmed that United Technologies Corp. is a parent corporation of Carrier and had been dismissed from the action by the plaintiff. Oral Reasons at 25.

[4]The district court also ruled on the defendant's substantive theories of recovery under the LPLA. The court found that Taylor had failed to prove that Carrier's generator was

                              II.

     The LPLA defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."  La. R.S. 9:2800.53(7).  In *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998), we held that, by using the term "reasonably anticipated use," rather than the pre-LPLA term "normal use," which included all reasonably forseeable uses and misuses, the Louisiana Legislature sought to narrow the range of products' uses for which a manufacturer would be responsible.  If the plaintiff cannot successfully establish "reasonably anticipated use,"  we need not reach the substantive theories of recovery under the LPLA.  See *Hunter v. Knoll Rig & Equip. Mfg. Co.*, 70 F.3d 803, 806 n.3 (5th Cir. 1995)(Because we conclude...was not a "reasonably anticipated use", we need not reach the other issues presented.).

     We agree with the district court that Carrier should not be expected to "reasonably anticipate" that users of its products would fail to properly wash or ventilate its fuel-containing generators before welding upon them.  Well-accepted industry

---

"unreasonably dangerous" in either construction, design, or failure to warn.  Oral Reasons at 22-24.  Because Taylor cannot pass the threshold test of "reasonably anticipated use," we need not reach these findings.

                              -4-

standards from the American National Standards Institute (ANSI)[5] and regulations from the Occupational Safety and Health Administration (OSHA)[6] provide in great detail proper methods of washing and ventilating fuel-containing vessels to ensure that they are totally free of flammable materials before welding can begin.  Carrier had every reason to anticipate that anyone repairing its fuel-filled generators would adhere to the ANSI and OSHA guidelines and take common sense safety measures to fully clean and ventilate products that formerly contained flammable diesel fuel.  The plaintiff in this case failed to follow the safety measures, and offered no summary judgment evidence that the manufacturer should have anticipated this failure.  We therefore AFFIRM the judgment of the district court.

---

[5] See AWS F4.1:1999, RECOMMENDED SAFE PRACTICES FOR THE PREPARATION FOR WELDING AND CUTTING OF CONTAINERS AND PIPING, 3.5.2, 5.2.3-.7.

[6] See 29 C.F.R. § 1910.252(Welding, Cutting, Brazing) and 29 C.F.R. § 1926.352 (Fire Prevention).